## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREGORY RHEUBOTTOM** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 09-485** |
| | * | |
| **WASHINGTON METROPOLITAN** | * | |
| **AREA TRANSIT AUTHORITY** | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

Gregory Rheubottom has sued the Washington Metropolitan Area Transit Authority ("WMATA"), Alstom Transportation, Inc. ("Alstom"), and IFE North America ("IFE") for damages arising out of an injury he incurred while exiting a WMATA Metro train at the Greenbelt, Maryland station. The Court previously granted summary judgment in favor of Alstom and IFE and dismissed them from the case.

Rheubottom's allegation against WMATA is that, "either by means of its train operator negligently operating the train or by means of allowing the train to fall into [such] a state of disrepair . . . it malfunctioned," Rheubottom sustained an injury when the doors of the train prematurely slammed shut on his hand. Second Am. Compl. ¶ 8, 9. He further alleges that his hand was caught in the train doors for several minutes, exacerbating his injury. Second Am. Compl. ¶ 10.

WMATA has filed a Supplemental Motion for Summary Judgment (Paper No. 125). For the reasons that follow, the Motion is **GRANTED**.

**I.**

On August 26, 2007, Rheubottom boarded the WMATA Metro at the L'Enfant Plaza Metro Station en route to Greenbelt, Maryland, with the Baltimore-Washington International Airport as his ultimate destination.  When the train reached the Greenbelt station, the audible chimes and automated verbal announcement sounded, the doors opened, and Rheubottom began to exit the train.  While in the process of exiting, however, the train doors "slammed" shut on his left hand, trapping it in between them; the doors eventually opened and his hand was released.  Rheubottom says that only "a couple of seconds" passed between the time when the train doors opened and when they slammed shut on his hand.

The train operator, Lekechea Baker, was in a separate train car during these events.  She has stated in her deposition that she pushed the "door open" button when the train reached the Greenbelt station.  After gathering her belongings to leave the train, however, Baker realized that the doors of her own car were still not open.  She pressed the "door open" button again, and this time the doors opened and she was able to successfully leave the car.

The Metro train in question is programmed so that 5.25 seconds automatically elapse between the operator's first activation of the door closing procedure and final closure of the doors.  When the automated door closing procedure is activated, a verbal announcement and audible chimes sound before the doors open.  WMATA maintains a data set that tracks most of the activity of the train operator, called the "Train to Wayside Communications" ("TWC") data.  According to Joseph Krempasky, a WMATA engineer and WMATA's expert in this case, the TWC data produced for the train Rheubottom was riding on the day of the incident indicated "[t]hat the operator probably bumped . . . the doors on the off platform side to confirm that the doors were closed."  "Bumping" the doors occurs when the train operator presses the "door

open" and "door close" buttons almost simultaneously so that he or she may clear obstructions in the doorways.  When the operator "bumps" the doors, they do not fully open; instead, the doors "bounce," leaving insufficient space for a traveler to exit the train, and the audible chimes and announcements do not sound.

Rheubottom's contention is that WMATA, either by train operator error or as a result of a malfunction or design defect, caused his injury when the doors of the train closed on his hand. Earlier this year, however, the Court granted summary judgment in favor of WMATA on Rheubottom's claim of design defect or mechanical malfunction, finding that Rheubottom was precluded from admitting expert testimony to establish his theory of design defect or malfunction; expert testimony about the mechanical operations of the train and its door opening device was required for Rheubottom to prove his case, and Rheubottom had failed to comply with the procedural requirements for disclosing an expert witness.  *See* FED. R. CIV. PRO. 26(a)(2).  Rheubottom's remaining claim was and is that the train operator's error caused his injury.  WMATA now moves for summary judgment as to this claim.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute is one where the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).  A material fact is one that might affect the outcome of the lawsuit, given the relevant law.  *Erwin v. United States*, 591 F.3d 313, 320 (4th Cir. 2010).  When assessing a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his or her favor.  *Dulaney*, 673

F.3d at 330.   A nonmoving party may not, however, defeat summary judgment by making assertions lacking sufficient factual support or by relying on a mere "scintilla of evidence."   *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009).

**III.**

WMATA contends that it is entitled to summary judgment because Rheubottom "cannot prove that any act or omission of the train operator caused the doors to close in any manner other than as programmed by the design of the train and its doors."   As indicated, given the Court's previous ruling, Rheubottom cannot rely on any evidence of malfunction or design defect.

Rheubottom submits that there is a genuine dispute of material fact with respect to whether the train operator "mistakenly pressed the Door Close button immediately after pressing the Door Open button."   He cites two parts of the record to support this claim: first, he refers to the testimony of WMATA's expert, Joseph Krempasky, that Rheubottom's theory is consistent with his interpretation of the TWC data; and second, he refers to the train operator's testimony that the doors of the train were closed when she tried to exit the train, suggesting that she did not press the "door open" button, despite her intention to do so.   Relying on this evidence, Rheubottom suggests that the operator may have "bumped" the doors, a term used to describe the process of pressing the train's "door open" and "door close" buttons almost simultaneously so that the operator may clear obstructions in the doorways.   Rheubottom further argues that because the door "worked perfectly," the only way the doors could have closed too quickly was because of the train operator's error.

To successfully assert a claim for negligence under Maryland law, Rheubottom must establish the following four elements: (1) WMATA had a duty to protect him from injury; (2) WMATA breached that duty; (3) Rheubottom suffered an injury or loss; and (4) the injury or

4

loss was the proximate result of WMATA's breach of said duty. *Wash. Metro. Area Transit Auth. v. Seymour*, 874 A.2d 973, 976-77 (Md. 2005). WMATA asserts that there is no evidence of a breach, and that there is no genuine dispute that the doors worked exactly as programmed.

The Court agrees. Rheubottom has not produced sufficient factual support for his theory that his injury occurred when the train operator inadvertently "bumped" the doors. The record shows only that, a few minutes *after* Rheubottom exited the train, the operator "may have" bumped the doors on the opposite side of the train from where Rheubottom exited. In any event, the result of that "bumping," according to the uncontroverted testimony of WMATA's expert, Krempasky, is that the doors do not fully open; instead, they bounce, and the traveler *cannot* exit the train because there is insufficient space to exit. Moreover, there is also no audible chime and announcement that accompany the bounce.

Rheubottom's bumping theory is, therefore, belied by the evidence and his own testimony. First, he states that he exited the train onto the platform when the doors opened, but that they shut on his trailing hand a few seconds after they opened. The doors, however, do not open when bumped; they bounce, preventing a traveler from exiting. Second, Krempasky's unchallenged testimony is that the bumping occurred on the opposite side of the train from where Rheubottom exited, and minutes after the train had stopped. Third, Rheubottom testified that he heard the chimes and announcement before he exited, but the only record evidence is that the chimes and announcements do *not* sound when the operator bumps the doors.[1] In other words, viewing the evidence in the light most favorable to Rheubottom, there is no genuine dispute of fact as to whether the operator activated the doors properly. She did.

---

[1] Design defect or malfunction might explain these mutually exclusive circumstances, but Rheubottom cannot submit any evidence of that, given this Court's prior ruling.

**IV.**

For the foregoing reasons, the Court **GRANTS** WMATA's Supplemental Motion for Summary Judgment (Paper No. 123).  Final Judgment will be entered in favor of WMATA and this case will be **CLOSED**.

A separate Order will **ISSUE**.

_____

/s/

**PETER J. MESSITTE**

**UNITED STATES DISTRICT JUDGE**

**October 18, 2012**